JS-6

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **SACV 23-1707-KK-KESx** | Date: | December 18, 2023 |
| Title: | *Finland Financial Inc. v. United States of America* | | |

Present: The Honorable   KENLY KIYA KATO, UNITED STATES DISTRICT JUDGE

| Noe Ponce | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**     **(In Chambers) Order (1) DENYING Plaintiff's Motion for Summary Adjudication [Dkt. 13], (2) DENYING as MOOT Plaintiff's Request for Oral Argument and Presentation of Evidence and Live Testimony [Dkt. 19], and (3) DISMISSING the Instant Action With Prejudice**

## I.
## INTRODUCTION

On September 13, 2023, Plaintiff Finland Financial Inc. ("Plaintiff") filed a Complaint for Judicial Review and Abatement of Jeopardy Assessment and Jeopardy Levy made pursuant to 26 U.S.C. § 7429 against United States of America ("Defendant").  ECF Docket No. ("Dkt.") 1.  On October 30, 2023, Plaintiff filed a Motion for Summary Adjudication.  Dkt. 13.  On November 13, 2023, Defendant filed an Opposition to the Motion for Summary Adjudication.  Dkt 15.  On November 20, 2023, Plaintiff filed a Reply.  Dkt. 16.  On November 22, 2023, Plaintiff filed a Request for Oral Argument and Presentation of Evidence and Live Testimony.  Dkt. 19.  On November 27, 2023, Defendant filed a Response to Plaintiff's Request for Oral Argument and Presentation of Evidence and Live Testimony.  Dkt. 20.

The Court finds this matter appropriate for resolution without oral argument.  See FED. R. CIV. P. 78(b); L.R. 7-15.  For the reasons stated below, Plaintiff's Motion for Summary Adjudication is DENIED.

///
///
///

///

## II.
## RELEVANT FACTS

**A.     Indictment of Plaintiff's Corporate Officers for Offenses Arising Under the Coronavirus Aid, Relief, and Economic Security Act**

The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted in March 2020 that aimed to provide emergency financial assistance to Americans suffering economic harm due to the COVID-19 pandemic.  Dkt. 13 at 39-40, Declaration of Jonathan Lee Borsuk ("Borsuk Decl."), ¶ 3, Ex. 2 ("Indictment") ¶ 3.  One form of assistance offered by the CARES Act was the Paycheck Protection Program ("PPP") which authorized taxpayer-funded forgivable loans to small businesses for job retention and other expenses.  Id.  Another form of assistance offered by the CARES Act was the Economic Injury Disaster Loan Program ("EIDL") which provided low-interest financing to small businesses.  Id. ¶ 8.  As a small business, Plaintiff was the type of entity that might qualify for assistance offered by the CARES Act.  See id. ¶¶ 13-14.

The federal government implemented rules and procedures regarding how qualifying businesses could apply for and receive PPP loans.  See id. ¶ 4.  For example, a qualifying business was required to submit a PPP loan application signed by an authorized representative of the business and had to acknowledge the program rules to be eligible to obtain the PPP loan.  Id.  Additionally, a qualifying business was required to provide information about its operations, such as the number of employees and gross revenue, to be eligible to obtain an EIDL loan.  Id. ¶ 10.

On September 8, 2022, the two corporate officers of Finland Financial – Amber Singleton and Emanuel Tucker ("Officers") – were indicted by a Grand Jury for conspiracy to commit: "(a) wire fraud, in violation of Title 18, United States Code, Section 1343; and (b) bank fraud, in violation of Title 18, United States Code, Section 1344(2)."  Indictment ¶ 19.  Specifically, the Officers were accused of submitting at least 41 false and fraudulent PPP loan applications and at least 13 false and fraudulent EIDL applications, resulting in the funding and disbursement of approximately $13.7 million in loan proceeds to Plaintiff.  Id. ¶ 21.

**B.     Plaintiff's Deposits and Withdrawals at PNC Bank**

On January 5, 2023, Plaintiff opened a Bank Account ("Account") with PNC Bank ("PNC").  Borsuk Decl., ¶ 5, Ex. 4 ¶ 8.  On January 10, 2023, a U.S. Treasury check in the amount of $534,488.25 was deposited into the Account.  Id. ¶ 10.  On January 12, 2023, a second U.S. Treasury check in the amount of $585,876.94 was deposited into the Account.  Id.  On that same day and on January 13, 2023, five withdrawals totaling $266,684.00 were made from the Account.  Id. ¶ 12.

On January 17, 2023, PNC detected several suspicious circumstances related to the Account and deposited checks.  Id. ¶ 13.  For example, the Account was opened under the business name of "Finland Financial Inc." but the Employer Identification Number ("EIN") was addressed to "Finlan Financial Inc."  Id.  Additionally, PNC became aware that the two individuals named on the

Account – the Officers – had been indicted for PPP and EIDL fraud. Id. PNC, therefore, placed a hold on the Account to further investigate. Id. ¶ 15. PNC was later notified by the Internal Revenue Service ("IRS") of its intention to recall the funds deposited into the Account, and the IRS ultimately requested PNC place a hold on the remaining funds in the Account. Id. ¶ 18.

**C.      Plaintiff's Prior Action ("Prior Action") Against PNC**

Prior to the instant action, on February 24, 2023, Plaintiff filed a Complaint against PNC seeking the release of $853,736.19 ("Subject Funds"), constituting the remaining balance in the Account. Borsuk Decl., ¶ 4, Ex. 3. In the Complaint, Plaintiff stated "[t]wo alleged agents of the Plaintiff, [the Officers], have been identified as [] defendant[s] to the Indictment." Id. ¶ 23. Plaintiff stated, "[u]se of the Subject Funds by the Plaintiff is urgently needed for costs of defense and indemnity relating to defense against the Indictment." Id. ¶ 24. Moreover, Plaintiff claimed "[i]rreparable injury will be suffered if the Plaintiff cannot immediately obtain access to and use of the Subject Funds for the costs of counsel, defense, and indemnity relating to the Indictment." Id. ¶ 25.

On April 4, 2023, PNC filed a cross-complaint in interpleader, naming Plaintiff and Defendant ("Cross-Defendants") as parties, seeking (1) relief from any liability for the Subject Funds, (2) an order requiring Cross-Defendants to settle among themselves, and (3) an order allowing PNC to deposit the funds into the Court Registry. Borsuk Decl., ¶ 5, Ex. 4. On April 9, 2023, Plaintiff voluntarily dismissed its Complaint without prejudice. See Finland Financial, Inc. v. PNC Bank, Case No. 8:23-cv-342-DOC-JDEx (C.D. Cal.), dkt. 28. On June 15, 2023, PNC voluntarily dismissed its cross-complaint without prejudice. See id., dkt. 38.

**D.      Jeopardy Levy Issued Against Plaintiff**

On June 8, 2023, the IRS issued a jeopardy levy against Plaintiff and the Account ("Jeopardy Levy") with an intent to seize the Subject Funds. See dkt. 15-1, Declaration of Mark James Dela ("Dela Decl."), ¶ 13, Ex. B. The Jeopardy Levy was issued by Revenue Officer ("RO") Mark James Dela ("Dela") on behalf of the IRS, with the assistance of Revenue Officer Advisor ("ROA") Amanda Dudley ("Dudley"). See Dela Decl., ¶¶ 4, 11; dkt. 15-2 Declaration of Amanda Dudley ("Dudley Decl."), ¶¶ 1,4. Significantly, the Jeopardy Levy was based on a recapture assessment; not a jeopardy assessment[1]. See Dela Decl., ¶¶ 8-10; Dudley Decl., ¶¶ 5-7.

In determining whether issuance of the Jeopardy Levy was proper, Dela relied on (1) ROA Dudley's review of (a) transcripts for Forms 944 and W-2s filed by Plaintiff for the tax years ending December 30, 2020 and 2021, (b) Plaintiff's Complaint and PNC's Cross-Complaint in the Prior

---

[1] 26 U.S.C. § 7429 grants courts jurisdiction to review jeopardy assessments and levies. Plaintiff seeks relief "for wrongful jeopardy assessment and levy" under this statute. See dkt. 1 at 2. Defendant argues "[n]o jeopardy assessment was made," and only a jeopardy levy and recapture assessment occurred, the latter of which "this Court does not have jurisdiction to review[.]" See dkt. 15 at 8. Neither side disputes, however, that the IRS issued a jeopardy levy against Plaintiff. See dkt. 13 at 11, dkt. 15 at 11. Thus, the Court declines to address whether or not a jeopardy assessment occurred or whether or not jurisdiction to review a jeopardy assessment is proper.

Action as well as the Indictment; and (2) Dela's search of the IRS's internal database which related to a recapture assessment of excess employee retention credits claimed by Plaintiff.  See Dela Decl., ¶¶ 19-21.

The transcripts for the 944 and W-2 forms filed by Plaintiff for the tax years ending December 30, 2020 and 2021, revealed inconsistencies between the wages Plaintiff reported on the 944 form versus the wages Plaintiff reported on the W-2 forms.  Dudley Decl., ¶¶ 11-20.  For example, for tax year 2020, Plaintiff reported wages of $2,635,666.27 on its Form 944, but only reported wages of $710,000 on its W-2 forms.  Id., ¶ 12.  Moreover, while Plaintiff reported federal income tax withholdings on its Form 944 and its employees' W-2s, Plaintiff made no withholding deposits for 2020 or 2021.  Id., ¶ 20.

Dela also reviewed an analysis related to the IRS's recapture of employee retention credits claimed by Plaintiff on May 11, 2023.  Id., ¶ 25.  This analysis was based on the IRS's review of the 944 forms filed by Plaintiff and the IRS internal database.  Id., ¶¶ 21, 25.  The IRS ultimately determined Plaintiff received more employee retention credits than it should have.  Dela Decl., ¶¶ 8, 20-24.

### III.
### DISCUSSION

#### A.    Applicable Law

The procedures for administrative review of jeopardy levies and assessments are set forth in 26 U.S.C. § 7429 ("Section 7429").  Section 7429(a)(2) allows a taxpayer to request the Secretary to review an action (1) "within 30 days after the day on which the taxpayer is furnished the written statement described in paragraph 1"; or (2) "within 30 days after the last day of the period within which such statement is required to be furnished."

Section 7429(b)(1) provides for judicial review of jeopardy levies and assessments "[w]ithin 90 days after the earlier of (A) the day the Secretary of the Treasury notifies the taxpayer of the Secretary's determination described in subsection (a)(3), or (B) the 16th day after the request described in subsection (a)(2) was made."  26 U.S.C. § 7429(b)(1).  "[T]he district courts of the United States . . . have exclusive jurisdiction over any civil action for a determination under this subsection."  Id. § 7429(b)(2).  The Court is required to determine whether the levy or assessment is reasonable, and whether the amount assessed is appropriate under the circumstances.  See id. § 7429(b)(3).

#### B.    Jurisdiction

On June 15, 2023, Plaintiff submitted a request to the IRS for administrative review of the Jeopardy Levy pursuant to Section 7429(a)(2).  See dkt. 13 at 33-37, Declaration of Vernon Oates ("Oates Decl."), ¶ 9.  Plaintiff's request for administrative review was within the 30 days required by Section 7429(a)(2), and thus, was timely.

Plaintiff subsequently filed this action on September 13, 2023 seeking judicial review of the Jeopardy Levy pursuant to Section 7429(b).  Dkt. 1.  The Court finds – and the parties do not

dispute – that as of the date of this decision, the Secretary has not notified Plaintiff of its determination of Plaintiff's request for administrative review.  Despite this, Plaintiff filed its complaint within 90 days of the 16th day after the request was made, and thus, it is timely.  See dkt. 1; 26 U.S.C. § 7429(a)(2) & (b)(1).  Therefore, pursuant to Section 7429(b)(2)(A), the Court has jurisdiction to review the Jeopardy Levy.

## IV.
## ANALYSIS

### A.    Reasonableness of the Tax Levy

The United States bears the burden of showing that issuance of a jeopardy levy is reasonable. 26 U.S.C. § 7429(g)(1).  A jeopardy levy is considered reasonable "so long as the decision to impose it falls between something more than not arbitrary and capricious and something less than supported by substantial evidence."  Golden ADA, Inc. v. United States, 934 F. Supp. 341, 344 (N.D. Cal. 1996) (internal citations omitted); see also 5 U.S.C. § 706(2)(A).  In determining the reasonableness of a jeopardy levy, "courts generally look to see if one of three conditions set forth by the Treasury Regulations is present."  Kalkhoven v. United States, Case No. 2:21-cv-01440-KJM-JDP, 2021 WL 4206767, at *3 (E.D. Cal. Sept. 15, 2021) (citing Larson v. United States, Case No. 11-03093-WHA, 2011 WL 2682991, at *2 (N.D. Cal. July 11, 2011)).  These conditions are whether:

    (1)  The taxpayer is or appears to be designing quickly to depart from the United States or to conceal himself or herself;

    (2)  The taxpayer is or appears to be designing quickly to place his, her, or its property beyond the reach of the Government either by removing it from the United States, by concealing it, or dissipating it, or by transferring it to other persons; and

    (3)  The taxpayer's financial solvency is or appears to be imperiled.

Id. at *3-4 (citing 26 C.F.R. § 1.6851-1(a)(1)).

To establish whether a jeopardy determination is reasonable, it is only necessary to establish "the taxpayer's circumstances appear to be jeopardizing collection of a tax – not whether they definitely do so."  Golden W. Holdings Tr. v. United States, Case No. 2:05-cv-02237-PHX-SMM, 2009 WL 1457107, *4 (D. Ariz. May 21, 2009) (emphasis in original) (internal citations omitted).  "In determining the reasonableness of the government action, the court is not limited to consideration of the information available to the IRS at the time of the assessment but must also consider any subsequently available information that might affect the reasonableness" of the jeopardy determination.  Golden ADA, 934 F. Supp. at 344.

Here, the Court finds the Jeopardy Levy was reasonable.  First, in Plaintiff's February 24, 2023 Complaint against PNC in which Plaintiff sought release of the remaining balance in the Account, Plaintiff admits "[u]se of the Subject Funds by [Finland] is urgently needed for costs of defense and indemnity relating to defense against the Indictment[,]" of the Officers, and "irreparable injury will be suffered if the Plaintiff cannot immediately obtain access to and use of the Subject Funds for the costs of counsel, defense, and indemnity relating to the Indictment."  Borsuk Decl. ¶4, Ex. 3 ¶¶ 24-25.  Plaintiff's own admission of needing "urgent[]" and "immediate[]" access to the

Subject Funds in order to pay for legal counsel appears to constitute an attempt to place the Subject Funds beyond the reach of the Government by way of dissipation.

Second, while Plaintiff argues "it is reasonably inferable that the IRS used the jeopardy procedures here precisely because the Subject Funds were proposed to be applied" to Plaintiff's defense, see dkt. 13 at 27, such alleged motivation is not one of the three conditions relevant to this Court's analysis in determining reasonableness. See Golden ADA, 934 F. Supp. at 344; 5 U.S.C. § 706(2)(A). Moreover, Plaintiff fails to consider the entire investigative process undertaken by the IRS in determining whether the Jeopardy Levy was proper. See Dela Decl., ¶¶ 11-25; Dudley Decl., ¶¶ 4-21. In making its jeopardy determination, in addition to considering Plaintiff's Prior Action with PNC Bank, the IRS also considered (1) the inconsistencies between the wages Plaintiff reported on the Form 944 and the wages Plaintiff reported on the W-2 forms in the tax year 2020, and (2) the employee retention credits claimed by Plaintiff that the IRS later recaptured upon concluding Plaintiff received employee retention credits in excess. See Dela Decl., ¶¶ 11-25; Dudley Decl., ¶¶ 4-21. Given Plaintiff's own admission of needing access to the Subject Funds, the inconsistencies in the tax year 2020 forms, and the recapture assessment, the IRS had a reasonable belief the Subject Funds were in jeopardy, and this belief was not arbitrary or capricious. See Golden ADA, 934 F. Supp. at 344.

Accordingly, the Jeopardy Levy was reasonable.

**B.      Appropriateness of the Amount Assessed**

While Defendant bears the burden of establishing whether the issuance of a jeopardy levy is reasonable, "the amount assessed is presumed to be reasonable." Golden ADA, 934 F. Supp. at 346; see also 26 U.S.C. § 7429(g)(2). Plaintiff bears the burden regarding appropriateness of the amount of a jeopardy levy and must show Defendant's assessment was factually defective, irrational, arbitrary, or unsupported. Camp v. C.I.R., 635 F. Supp. 585, 588 (E.D. La. 1986).

Here, Plaintiff fails to adequately explain how the amount assessed was not appropriate or to identify any issues with respect to the amount of the Jeopardy Levy. Other than briefly mentioning the alleged inappropriateness in its initial Complaint, see dkt. 1 at 4, Plaintiff makes no mention of the amount assessed in either its Motion for Summary Adjudication or Reply. See dkts. 13, 16. The amount assessed by the IRS is presumed to be reasonable. See Golden ADA, 934 F. Supp. at 346; see also 26 U.S.C. § 7429(g)(2). Thus, Plaintiff has failed to meet its burden of demonstrating the Jeopardy Levy amount assessed was not appropriate.

## V.
## CONCLUSION

For the foregoing reasons, the Court finds, pursuant to 26 U.S.C. § 7429(b)(3), Defendant has met its burden with respect to the issuance of the Jeopardy Levy under 26 U.S.C. § 6861, and the Jeopardy Levy was reasonable under the circumstances. The Court further finds Plaintiff has failed to meet its burden to establish the amount of the Jeopardy Levy was not appropriate. As such, the Court hereby DENIES Plaintiff's Motion for Summary Adjudication and DISMISSES the instant

action with prejudice.  The Court further DENIES as MOOT Plaintiff's request for Oral Argument and Presentation of Evidence and Live Testimony.

Accordingly, the relief sought in Plaintiff's Complaint is denied in full.  Judgment is hereby entered in favor of Defendant and against Plaintiff.  IT IS THEREFORE ORDERED that the Clerk of Court shall close this action.

**IT IS SO ORDERED.**